IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

**LASHARON LOGAN**                                                     **PLAINTIFF**

V.                                                                                    **CIVIL ACTION NO.**
                                                                                       **3:09-CV-101-SAA**

**MICHAEL J. ASTRUE,**
**COMMISSIONER OF**
**SOCIAL SECURITY**                                                  **DEFENDANT**

## FINAL JUDGMENT

After a hearing before the undersigned United States Magistrate Judge, the court reverses the decision of the Commissioner of Social Security and remands for reconsideration of Ms. Logan's claim in light of this opinion.

Ms. Logan argued that The ALJ did not afford her treating physician, Dr. Leal, and his medical opinion the proper deference in making his determination of disability, which was contrary to 20 C.F.R. § 404.1527(d), 20 C.F.R. § 416.927(d); SSR 96-2p and SSR 96-5p. Docket #8, p. 6. Further, that in the absence of controverting evidence from a treating or examining physician, the treating physician's opinion was binding. *Newton v. Apfel*, 209 F.3d 448, (5th Cir. 2000); *see also Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000).

The ALJ was required under the law to evaluate the treating physicians' opinions in accordance with the legal standards set forth in the regulations. *See* 20 C.F.R. § 404.1527(d)(2009), 20 C.F.R. § 416.927(d)(2009). Specifically, the evaluation of a medical opinion must include the following factors:

> (1) Examining relationship. Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.
> (2) Treatment relationship. Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a

unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

(3) Supportability. The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion. Furthermore, because nonexamining sources have no examining or treating relationship with you, the weight we will give their opinions will depend on the degree to which they provide supporting explanations for their opinions. We will evaluate the degree to which these opinions consider all of the pertinent evidence in your claim, including opinions of treating and other examining sources.
(4) Consistency. Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.
(5) Specialization. We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.
(6) Other factors. When we consider how much weight to give to a medical opinion, we will also consider any factors you or others bring to our attention, or of which we are aware, which tend to support or contradict the opinion.

20 C.F.R. § 404.1527(d), 20 C.F.R. § 416.927(d). If the ALJ determines that the treating physician's opinion does not merit controlling weight, then he is required to articulate the rationale for this determination. 20 C.F.R. § 404.1527(d)(2), 20 C.F.R. § 416.927(d)(2).[1]

---

[1] When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(I) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.
(I) Length of the treatment relationship and the frequency of examination. Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion. When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the source's opinion more weight than we would give it if it were from a nontreating source.
(ii) Nature and extent of the treatment relationship. Generally, the more knowledge a treating source has about your impairment(s) the more weight we will give to the source's medical opinion. We will look at the treatment the source has provided and at the kinds and extent of examinations and testing the source has performed or ordered from specialists and independent laboratories. When the treating source has reasonable knowledge of your impairment(s), we will give the source's opinion more weight than we would give it if it were

Moreover, unless there is contrary medical evidence, the ALJ must afford the treating physician's opinions significant weight in making his determination of disability. *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000). Medical evidence is not limited to laboratory findings and x-rays, it also includes observations made by physicians during physical examinations. *Ivy v. Sullivan*, 898 F.2d 1045, 1048 (5th Cir. 1990). Evidence includes medical history, statements by the claimant and statements regarding the treatment received. 20 C.F.R. § 404.1512(b); 20 C.F.R. § 416.912(b).

In this instance, Ms. Logan claimed disability due to her mental illness, and in evaluating mental illness, there is little to no "objective medical evidence" such as laboratory findings. Consequently, the ALJ must rely on observations made by Logan's treating physicians, her statements regarding her disability and the treatment she has received. The record is replete with evidence that supports her contention of disabling depression. Logan's treating medical doctor, Dr. Mona Castle, stated in her treatment notes that Logan was depressed, "in tears," and that on February 29, 2008 her care plan included a contract "that suicide is not an option." Tr. 411-12. Dr. Castle's notes frequently commented on Logan's depression and mental illness. Tr. 423; 426-27;430; 443; 458.

Dr. Jose Leal, Logan's treating psychiatrist, diagnosed her with major depressive disorder, single episode, severe with psychotic features and generalized anxiety disorder. Tr. 993. Dr. Leal identified certain medical signs that supported his diagnoses and examples of such signs are found throughout Logan's medical records. Secondly, many of Dr. Leal's assessments

---

from a nontreating source.

are not wholly inconsistent with that of the consultative examiner Dr. Dees's assessment. For example, both Drs. Leal and Dees concluded that Logan could understand and carry out simple instructions but would not be able to understand and remember detailed instructions and would function best in a non-interpersonally intensive work environment.   Tr. 989, 997-98.

Both Dr. Leal and Dr. Castle were careful to distinguish between those areas in which Logan was impaired and those in which she was not.  The evaluations in their reports were thoughtful and do not appear to have been attempts to manipulate the outcome of Logan's claim. Logan herself testified that she experienced difficulty concentrating, nervousness, tearfulness, was upset and irritable without reason, an inability to care for her small child, spending much of the day in bed, lack of interest in previous activities (anhedonia), diminished energy, inability to perform housework, suicidal ideation and auditory and visual hallucinations.  Tr. 27-33.  There is evidence of these claims throughout treatment notes from Communicare and Dr. Castle.  Logan's anxiety and depression were treated with numerous medications, including Remeron, Prozac and Buspirone.  Tr. 1000.  Dr. Leal referred her for inpatient treatment, and she was hospitalized with a chief complaint of "psychotic, meds ineffective; hearing voices telling her to kill folks, unable to manage outpatient."  Tr. 609.   Finally, Logan testified that her treatment at the time of the hearing included visits by a case manager two to three times a week, bi-weekly meetings with a counselor and treatment by Dr. Leal,  Tr. 27-28, a rigorous treatment regimen under any analysis.

When the ALJ discounted the opinions of Logan's treating physicians, Drs. Castle and Leal, he was required to explain his rationale for doing so in accordance with factors identified in the regulations.  The ALJ, however, failed to do so, which was not in accordance with the

4

appropriate legal standards. In the court's opinion, consideration of the six factors set out in §404.1527(d) would likely lead to a different result. As demonstrated by the record, Drs. Leal and Castle have long treatment records with Logan and saw her frequently, and Dr. Leal's medical speciality is psychiatry – all factors cited by the regulations. The ALJ made no mention of these factors in his opinion. Secondly, there was sufficient medical evidence, as described above, to support the treating physicians' medical opinions regarding Logan's limitations. A careful review of the record demonstrates that although Logan has periods of improvements such as that cited by the ALJ on November 4, 2008, she also has periods of regression such as that period occurring shortly thereafter, in December 2008. Tr. 15, 1004-5. Moreover, the record demonstrates at least a two-year history of depression marked by sleep disturbances, anxiety, lack of energy, audio and visual hallucinations and inability to care for her children without assistance. Because there was supporting medical evidence, the ALJ committed error when he completely rejected the treating physicians' opinions in favor of those opinions by the State agency non-examining psychologist, Dr. Dees, and consultative examiner Dr. Small, who saw Logan soon after her hospitalization and repeatedly noted he had no information on Logan or documentation to support her claim of depression. Finally, there was no contradictory evidence cited by Dr. Dees or Dr. Small to discount Dr. Leal's decision. The error was not harmless.

      For the foregoing reasons, the undersigned finds that this case is to be reversed and rendered to the Commissioner of Social Security for reconsideration of Logan's claim in light of this opinion.

      SO ORDERED, this, the 21st day of June, 2010.

                                    /s/   S. Allan Alexander
                                    UNITED STATES MAGISTRATE JUDGE